**UNITED STATES of America, Plaintiff,**

**and**

**Wayne County Department of Health, Air Pollution Control Division, Plaintiff-Intervenor,**

**v.**

**CROWN ENAMELING, INC., and Cathodic Electrocoating Company, Defendants,**

**and**

**Crown Enameling Products, Inc., Defendant-Intervenor.**

Nos. 85–CV–70213–DT, 85–CV–71873–DT.

United States District Court,
E.D. of Michigan, S.D.

Jan. 23, 1987.

William R. Sierks, U.S. Dept. of Justice, Environmental Enforcement Section, Land & Natural Resources Div., for plaintiff.

John Voelpel, Detroit, Mich., for defendants.

## MEMORANDUM ORDER

COHN, District Judge.

### I.

This is a Clean Air Act case. 42 U.S.C. § 7401 *et seq.* Before me are plaintiffs' motion for entry of two judgments regarding atmospheric emissions from defendants' emission sources and defendants' motion to hold entry in abeyance or modify them before entry.

The parties in these companion cases signed proposed judgments (each labelled "Consent Decree") resolving their claims. The signatures were made over the period July through November of 1986. The proposed judgments were lodged on November 17, 1986. Pursuant to 28 C.F.R. § 50.7, they were published in the Federal Register on December 5, 1986. Section 50.7 states that it is the policy of the Department of Justice:

> (a) ... to consent to a proposed judgment in an action to enjoin discharges of pollutants into the environment only af-

ter or on condition that an opportunity is afforded persons (natural or corporate) who are not named as parties to the action to comment on the proposed judgment prior to its entry by the court.

(b) The Department shall reserve the right (1) to withdraw or withhold its consent to the proposed judgment if the comments, views and allegations concerning the judgment disclose facts or considerations which indicate that the proposed judgment is inappropriate, improper or inadequate ...

(Omitting portions not relevant to the motions.) Section 50.7 was explicitly referenced in each proposed judgment. The 30–day comment period expired on January 5, 1987 without any comment by persons not party to the cases.

Defendants now seek delay of entry of the judgments basically on the ground that certain volatile organic compound (VOC) emission limitations are impossible of performance. Cathodic Electrocoating Company (Cathodic) asserts that it cannot meet the allowable emission limitations set forth in ¶ 19 of the Wayne County Air Pollution Control Division (WCAPCD) permits (App. B to "Consent Decree" with Cathodic); the allowable topcoat gallonage limitation set forth in ¶ 48(b); and the monthly limitation set forth in ¶ 18. Crown Enameling, Inc., and Crown Enameling Products, Inc. (Crown), assert that they cannot meet the VOC emission limitation set forth in ¶ 19 of the WCAPCD permits (Ex. B to "Consent Decree" with Crown).

Defendants state that the information that prompted them to seek modification was not known until after the parties had signed the proposed judgments because the pollution control equipment, which the parties agreed in negotiations would be installed, was not installed and tested until December of 1986. Defendants seek delay of entry so that they may negotiate for what they claim are achievable limits that are permissible under the relevant statutes and regulations. Alternatively, they seek modification by me on grounds of "mutual mistake," and they argue that the reduced

limitations they propose will further the purposes of the proposed judgments.

Plaintiffs oppose delay and seeks entry now, with any modifications to be addressed under the proposed judgments' procedures for modifications. Plaintiffs represent that they will not seek penalties under the judgments for noncompliance in the interim. The parties have engaged in preliminary discussions regarding defendants' ability to comply with the limitations currently in the proposed judgments.

## II.

### A.

■■■ The parties agree that consent judgments are subject to ordinary contract principles. The difference is that they are subject to judicial policing. *Firefighters Union Local No. 1784 v. Stotts,* 679 F.2d 541, 556 (6th Cir.1982), *re'vd on other grounds,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). Like any settlement agreement, which a court can enforce as a binding contract, *see Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976), a proposed consent judgment is binding on the parties as a contract even if the court does not enter it as a judgment. *Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States,* 671 F.2d 1305, 229 Ct.Cl. 434 (1982).

### B.

Defendants first argue that the proposed judgments are not binding because plaintiffs did not express unequivocal acceptance before the defendants sought to modify the limitations sometime in December, *viz.,* before the January 5, 1987 cut-off for public comments. Defendants' position is that the Department of Justice (the Government), by incorporating the unilateral right to withhold consent pursuant to 28 C.F.R. § 50.7, only conditionally accepted as of December, 1986 and did not attempt to unequivocally accept until after the public comment period expired on January 5, 1987. Defendants are wrong.

Plaintiffs had already signed the proposed judgments before defendants sought to modify the limitations. Thus, the Government was not consenting *after* the public comment period—which is one route provided for by 28 C.F.R. § 50.7(a)—but *on condition* that a public comment period be afforded before entry by the court—the alternative route provided for by § 50.7(a). The parallel conclusion, based upon § 50.-7(b), is that the Government reserved the right to *withdraw* its consent upon the limited condition that subsequent public comments made such withdrawal appropriate. The Government was not in a position to *withhold* its consent after the public comment period since it had already consented.

■ The Government's acceptance was conditional, but this does not allow defendants to elect withdrawal from the proposed judgments. By November 14, when the last Government agent signed the proposed judgments, there were two present agreements, under which performance could be expected only after the public comment period expired. The proposed judgments were already binding and would continue to be so absent the subsequent occurrence of certain conditions set forth in § 50.7 and incorporated in the proposed judgments. *See generally* In Re *KMMCO, Inc.,* 40 B.R. 976 (E.D.Mich.1984); *Smeader v. Mason,* 341 Mich. 139, 67 N.W.2d 131 (1954); *American Ins. Co. v. Stoy,* 41 Mich. 385, 1 N.W. 877 (1879). The proposed judgments were contracts because the Government did not reserve the right to withdraw for any reason whatsoever, but only for the limited reasons set forth, conditions over which the Government had no control. *See Stark v. Budwarker, Inc.,* 25 Mich.App. 305, 181 N.W.2d 298 (1970). The condition relevant here was that, after the 30–day public comment period, no one must have commented.

The agreements would have been voidable by the Government only upon the failure of this condition, i.e., if someone *had* commented. Defendants consented to the inclusion of this condition subsequent, and since the condition has not occurred the Government has not had any right under the agreements to withdraw.

### III.

■ Defendants argue in the alternative that, if the proposed judgments are binding, I should unilaterally modify them. This would not be appropriate. First, although defendants provide authority for a court unilaterally modifying a judgment already in force so as to effectuate its purpose, *e.g., United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932), they provide no authority for imposing a settlement upon the parties that one side opposes.* Were I to *increase* the limitations rather than reduce them (on the ground that tighter restrictions on pollution would further their purpose to avoid pollution), defendants would surely cry foul and demand trial on the merits of the case.

Second, although defendants state their version of the purposes of the proposed judgments, the Government has not been explained what it considers to be their purposes. Defendants rely on language from the proposed judgments and assert that their primary purpose was to bring defendants within the maximum emissions allowed by law while allowing them to remain in business. The Government may have important reasons, however, for requiring defendants to emit substantially less than the legal ceiling. As I expressed at the January 20, 1987 hearing on the motions, my involvement in this case has been minimal while the parties negotiated the proposed judgments. The multiple pur-

* Other than *Swift, supra,* the only other case cited by defendants on this issue is *Chrysler Corp. v. United States,* 316 U.S. 556, 562, 62 S.Ct. 1146, 86 L.Ed.2d 1668 (1942). Neither case supports their argument, since the source of the trial court's power to modify the judgment in each case was (in addition to explicit language in the consent judgments) inherent in its equity jurisdiction, 286 U.S. at 114, 52 S.Ct. at 462. While such retention of jurisdiction for purposes of modification is also found in the proposed judgments here, they do not grant me authority to modify the proposed judgments before they are entered as judgments. Nor can such power be derived from equity principles, since there is not yet a judgment that must be enforced to protect judicial integrity.

poses of the proposed judgments are not yet clear enough to allow me to modify them.

## IV.

### A.

 While the proposed judgments are binding on the parties, this does not allow me to "rubber stamp" them and enter judgments. Before a court can enter a consent judgment, it must determine that the judgment is fair and adequate and is not unlawful, unreasonable, or against public policy. *See United States v. Hooker Chem. & Plastics Corp.,* 607 F.Supp. 1052 (W.D.N.Y.), *aff'd,* 776 F.2d 410 (2d Cir.1985); *United States v. Seymour Recycling Corp.,* 554 F.Supp. 1334 (S.D.Ind.1982).

### B.

 The parties agree that a mutual mistake of fact is one ground for avoiding a consent judgment. *See Cheyenne-Arapaho Indians, supra,* 371 F.2d at 1311. Defendants' position is that the parties drafted the limitations in the proposed judgments under the mutually mistaken belief that they could be achieved using the pollution control devices contemplated by the parties. At the January 20 hearing, defendants introduced two affidavits in support of an earlier affidavit on the issue of impossibility. The affidavits are conclusory. An evidentiary hearing is required to determine whether there is evidence to support the affidavits and whether the emission limitations identified above are unfair or unreasonable.

## V.

The motions are held in abeyance until the parties present evidence on the issue of fairness and reasonableness. The deputy clerk shall issue a notice for an evidentiary hearing, to be limited to the narrow issue of the impossibility of meeting the emission limitations identified above.

SO ORDERED.